Okay. Good afternoon, counsel. Thank you for accommodating our unusual way of doing this argument today. Let me ask, have either of you done an argument by telephone yet? I have not. I have not either. Okay. So we've been doing it for over a month this way on this court, and it normally works pretty well. We just have to be patient and a little bit to avoid stepping on each other's toes. But we'll get through it. So, Ms. Dixon, did you want to reserve any time? If I could reserve three minutes for rebuttal, please. Okay. You may begin. May it please the Court, Courtney Dixon from the Department of Justice for the defendants. The Supreme Court has never extended Bivens to a claim under the First Amendment. That renders this context new under Abbasi, and a special factors analysis is therefore required. Numerous special factors counsel hesitation in recognizing a First Amendment retaliation claim in the prison work assignment context. That's confirmed by this Court's opinion in Vistrian, which refused to extend Bivens to a First Amendment retaliation claim in the prison housing assignment context. In so doing, this Court noted its agreement with the strong trend in district courts that a First Amendment retaliation claim should not be recognized in the prison context generally. Ms. Dixon, before you get into the merits of the argument, would you perhaps address the question that opposing counsel has raised in their brief that we do not have jurisdiction? Certainly, Your Honor. There's no jurisdictional problem here. This Court has recognized on numerous occasions, including in Vistrian itself, that interlocutory appellate jurisdiction is proper over the denial of summary judgment where the defendants are asserting a qualified immunity defense, and the issue on appeal is a legal one, whether the law was clearly established. Moreover, as this Court recognized in Vistrian and Vanderklok, and as the Supreme Court recognized in Wilkie, Without the assertion of the qualified immunity defense, would we have jurisdiction? I don't think this Court needs to answer that, because of course the qualified immunity defense is properly before this Court. The Supreme Court's footnote in footnote 4 in Wilkie, Your Honor, noted that interlocutory appellate jurisdiction was appropriate over the Bivens cause of action, which was antecedent to the legal claims presented. But of course, as I mentioned, I don't think this Court needs to decide that, given that there's no question that this Court has interlocutory appellate jurisdiction over the denial of qualified immunity, again, where the only issue on appeal, as here, is a legal one, whether the law was clearly established. That was the same setting in Vistrian and Vanderklok, was it not? Yes, Your Honor, it was, as we note in our brief. This Court can assume every fact in plaintiff's favor and still decide, as a matter of law, that there is no Bivens cause of action in the context presented here under Abbasi, and that the law was not clearly established at the time. So there's no jurisdictional problem here. All right, thank you for your answer. Yes, and Your Honor mentioned Vistrian, I think Vistrian is of particular relevance here, because, as I mentioned, that claim involved a First Amendment retaliation claim in the prison context. The claim there was that the prisoner had been allegedly unlawfully placed in special housing in retaliation for constitutionally protected activity. That's not meaningful difference. That did have to do with detention, and the Court talked about the retaliation claims grounded in administrative detention decisions, which are uniquely prison decisions. Here we have a firing basically in a commissary. That really doesn't implicate the same kind of deference to prison officials as prison detention, does it? I disagree, Your Honor. The question under Abbasi, of course, is whether to recognize a Bivens cause of action for a particular class of claims as against a particular category of defendants. So here we're talking about a class of claims, a class of retaliation claims, in the context of prison work assignments. In the prison context, Your Honor, those decisions about whether to place an inmate in a work assignment, whether to remove an inmate from a work assignment, those are going to involve disciplinary concerns, concerns about prisoner safety and security, concerns about officer safety and security, and those involve all of the same concerns that go to the heart of prison administration, just as the claim in Bistrian. And the day-to-day administration of prisons, as this Court noted in Bistrian, has been committed to the expertise of the DOP. And Congress is in a better position, rather than the courts, to recognize a First Amendment retaliation claim in this context. But here Mr. Mack is already out of prison, right? He's just looking for damages. Does that change the analysis at all? That's not relevant to the Bivens analysis, or the Abbasi analysis, rather. Again, as I noted, the question under Abbasi is whether a damages cause of action should be recognized for a class of claims. It doesn't matter that plaintiff himself here is out of prison because he seeks to imply a damages remedy against the federal officials who acted at the time, and adjudicating that claim would require inquiry into the motives of the decision makers who acted at the time. That presents special concerns in the prison context and special factors counsel hesitation, regardless of whether or not plaintiff is himself now out of prison. I'm sorry. You say that Congress is the best to make this decision or to handle these situations, and I understand how separation of powers can impact on whether we would create a remedy, but it seems to hear perhaps the class of claims we would be permitting would be where the underlying issue has to do with discrimination based on religion, so that the courts are uniquely suited. So if the retaliation was for reporting a constitutional violation, maybe we should carve out that class as something that you should be able to pursue in the courts because the prisons aren't equipped to deal with that type of grievance or that type of situation. It's uniquely positioned for the courts. Your Honor, plaintiff alleges that he was terminated from his prison employment in retaliation for an oral grievance that he raised to Officer Stevens about his treatment. So his claim is fundamentally an employment one, a retaliation one, that I petitioned to this officer and then I was therefore removed from my prison employment. Plaintiff has a separate referral claim that's in the district court. It's not before the court here. But regardless, Your Honor, even setting aside how much his religion claim is tied in here, again, his claim that he's seeking to imply a damage remedy is under the First Amendment. It's a retaliation claim. As this court noted in Bistrian, that claim is easy to allege and hard to disprove. It's easily fabricated. And adjudicating that claim requires inquiry into the motives of the prison officials who acted. The plaintiff says that he was terminated for a protective reason. The prison says he was terminated for a disciplinary one. Adjudicating that claim in the prison context raises special concerns, just for all the reasons that this court recognized in Bistrian. How adequate can the remedy be here? He can't get money damages. The grievance system is really not equipped to deal with something like this. I agree with you, Your Honor, that there's not money damages, but I disagree that the remedy program isn't equipped to deal with situations like this. Through the BOP's Administrative Remedy Program, prisoners like plaintiffs here seek equitable remedies, prospective relief, and that includes reinstatement at prison employment. That distinguishes this case. How about back pay? Back pay? No, Your Honor, I don't believe back pay is available. I think reinstatement or similar equitable relief along those lines. But I don't think that that makes a difference because, again, one, the question is whether there is an administrative remedy, an alternative administrative remedy that protects the interest asserted, and here plaintiff's interest is his loss of employment, and he could have received reinstatement. And second, the Supreme Court has noted time and time again that an adequate alternative remedy need only provide some relief, not complete relief. In Schweiker v. Chiloky, Your Honor, for example, with the Social Security Program Administration issue there, there wasn't a possibility of plaintiffs receiving complete damages, but nonetheless the fact that there was some possibility of relief meant that the Bivens remedy wasn't available. The Supreme Court recognized as much in Malesko as well, as well as Abbasi. So I think the Administrative Remedy Program is a relevant special factor here, Your Honor. Plaintiff himself availed himself of that, which demonstrates that it was available, and although his claim ultimately wasn't successful and although he can't receive money damages, that doesn't mean that it's not a special factor of counseling hesitation. I'll also underscore that this Court in Vistrian looked just to the nature of the First Amendment retaliation claim itself in the prison context and didn't inquire into alternative remedies, and even just the nature of the First Amendment retaliation claim itself in Vistrian was enough to counsel hesitation. So there's Vistrian, but there's also MAC-2. What do we do about MAC-2? Is it abrogated? Can our panel decide the case differently? We haven't talked about MAC-2. MAC-2 is fundamentally inconsistent with Abbasi. MAC-2 held that a Bivens action was, quote, already available for a plaintiff's claim simply because this Court over 30 years ago in Patton and Millhouse had recognized some Bivens claims under the First Amendment. That's not consistent with Abbasi, which says we must look to decisions of the Supreme Court and not circuit courts in deciding whether a context is new. And moreover, Your Honor, if we go back to Patton and Millhouse, which were issued in 1975 and 1981 respectively, those cases don't do the inquiry that Abbasi demands either. And this Court has recognized that it need not follow a prior panel decision that is inconsistent with Supreme Court precedent. Isn't Vistrian supervening new law that would also allow us to reconsider our decision in MAC-2? I think Vistrian is highly relevant here. And I'll note as well that Vistrian, of course, recognized that both Patton and Millhouse, as well as MAC-2, were all on the books. But rather than follow those decisions, this Court and Vistrian stated that it's Abbasi and not this Court's prior precedent that must control. And I think the same conclusion adheres here, Your Honor. This Court has to apply Supreme Court precedent as it finds it. And in the context before it today, Abbasi, as well as Vistrian, compelled the conclusion that a Bivens remedy is not available for plaintiff's claim here. I see that I'm nearing the end of my time. Thank you. I'm happy to address any other questions that the Court has. Otherwise, I'll reserve the remaining three minutes for rebuttal. Fine. We'll hear you on rebuttal. Thank you. Thank you very much. May it please the Court. My name is Sarah Chapinski, and I represent the appellee, Charles Mack. First, I would like to address whether this Court has jurisdiction over the defendant's appeal, and then alternatively address the merits, discussing qualified immunity, and the validity of Mack's Bivens claim. And whether this Court decides that the law of the case in MAC-2 is still valid or that his claim needs to be reanalyzed, Mack still has a cognizable Bivens claim. Quickly, regarding jurisdiction, the District Court's ruling on summary judgment is based upon genuine issues of fact. So it is not a final order. This Court only has jurisdiction to the extent that the appeal involves questions of law. And there are at least nine disputed facts at issue in this case, and each bears on whether the defendant retaliated against Mack. And further, these disputed issues bear on whether special factors even exist, which is relevant to the Bivens. Isn't the Bivens issue a threshold legal question? To a certain extent, it may be a legal question. However, to the extent that it devolves into a special factors analysis, those are questions of fact, which the District Court is best positioned to resolve. Well, now you say that in Bistrian, but we resolved them ourselves in Bistrian. Yes, but. Exactly like Bistrian in terms of how it comes to us and the job before us. Yes, Your Honor, but in that case, I believe the District Court had evaluated special factors. I apologize, I'm not aware of that. But in this case, the District Court did not evaluate the special factors at hand, and it should get the opportunity to do so if this Court decides that a special factors analysis is needed. Regarding qualified immunity, this. I don't have it, though. Ms. Spinski, but that fact doesn't deny us of jurisdiction. I understand what your argument is, but I'm not quite sure that the question of whether we have jurisdiction is defeated by the existence of some fact questions, particularly when Bivens is a threshold question and we have a qualified immunity defense here, and we have to determine whether or not there's a constitutional violation. Which is exactly the way Bistrian came up. Bistrian came up on a qualified immunity determination, and lo and behold, we said Bivens was threshold. Yes, Your Honor, but I apologize. Continue, please. No, go ahead. This Court has already decided that the defendants did not have qualified immunity in MAC-2. This Court noted in MAC-2 that it has long recognized that prisoners have a right to be free from retaliation for exercising their First Amendment right to petition. While defendants attempt to argue that this is clearly erroneous and so it should be reconsidered, that's an extraordinarily high bar. A court needs a clear conviction that that prior decision was wrong, not just a mere doubt. What could be clearer than the statement in Bistrian that says the Supreme Court has never recognized the Bivens remedy under the First Amendment? What could be clearer than that? We also, however, still have MAC's Religious Freedom Restoration Act claims remaining and qualified immunity bears on that as well. We're not just discussing the Bivens claim underlying here. So to find that there is no qualified immunity for this kind of retaliation, this panel would have to almost entirely swallow the law of the case doctrine entirely to revisit it. The standard is not just that you disagree with a prior ruling, but that prior ruling is so manifestly wrong it would be absurd. And even if the panel disagrees with it, it's not manifestly wrong. This is settled. Regarding the Bivens claim. But aren't Abbasi and Bistrian supervening new laws that allow us to disregard what MAC 2 said? Respectfully, Your Honor, I disagree that Abbasi altered the law. The law is only altered if the case's outcome would have been different in light of the new decision. And the holding in MAC 2 would have been in line. Accepting your argument on that, how can you say that Bistrian, who interpreted Abbasi on a First Amendment retaliation case, didn't create supervening a new law? Respectfully, Your Honor, I believe that Bistrian is factually distinct. Bistrian involved various forms of confinement, and that is certainly to the discretion of the penal authority. But what we have here is essentially an employment discrimination case. Nothing here goes to the heart of prison safety concerns or expertise. Didn't we already say in Bistrian, and I'm looking at page 95, more recently we implied a Bivens remedy in cites to MAC, saying we reject the plea not to extend it. Since those cases were decided, Supreme Court issued its opinion, which clearly communicated that expanding Bivens beyond those contexts already recognized is disfavored. So didn't Bistrian almost hold that Abbasi was supervening authority and rejected that? Yes. Yes, under that reading of it, it could hold that, yes. And in that case, this court would then devolve into a special factors analysis because MAC would be preventing a new con. Let's get to the special factors analysis. The government has outlined numerous factors that they believe are problematic. Can you tell us why this is different from Bistrian and why this retaliation claim, although others, should be permitted to proceed? Absolutely. As I had discussed, Bistrian is where a man was beaten in a courtyard and placed in solitary confinement. This really got to the heart of penal authority discretion, which we talk about types of confinement and issues of safety of prisoners and guards. We have none of those issues implicated here. This is an employment discrimination case about retaining a job in a commissary. We don't have these core concerns of safety and confinement here. Factually, these are quite distinct. And moreover, we're not trying to discuss changing a policy here. This is challenging a particular set of individuals for a particular set of incidents. This will really go to the heart of what Abbati said, which is to turn the officer from enacting this kind of retaliation. How can we allow a broad, unless you're going to confine this, if the class of cases is anyone in the prison who contends they've been retaliated against for complaining about something, we would be, the district courts would be flooded. How do you propose to define this class so as to not to open the floodgates to a lot of, he said, she said, litigation? Well, Your Honor, this circuit has acknowledged a First Amendment vivence right for years, and if you're prior to Abbati and Bistrian, and the district courts did not have that problem. So I don't believe finding that in a specific set of circumstances when you want to talk about retaliation for complaining against mistreatment, that in itself is not a garden variety retaliation claim. So I feel that that would be appropriately limited, especially given the history of this circuit. Patton was having to do with denial of access to courts. That's different. So that's the only recognition we did. And denial of access to courts is pretty important. I don't know how retaliation for First Amendment, I don't know how that would fare in comparison to denial of access to the courts. I understand that concern, but there was still that broader recognition such that it did not deter the court in MAC-2 from finding that it existed, and there hasn't been in those four years since MAC-2 an issue in the district courts. So I fail to see that there would be an issue now four years later. Special factors, additionally ones that have counseled hesitation, are things like national security and military service and the executive branch's investigative and prosecutorial functions. Those are not at issue here, nothing of that high of importance or concern of safety. The defendants also argue that there are alternative remedial structures in place, such that the Bureau of Prisons structure that MAC attempted to prevail himself of. But this was hardly appropriately remedial. This was not an elaborate comprehensive scheme delineating remedies or mandating procedural safeguards like in Bush v. Lucas of the Supreme Court case where they found there was not a First Amendment right. There were these elaborate remedies. Well, here he could have, couldn't he? Under Malesko, he could have sought an injunction, couldn't he? He could have gone into federal court. And isn't this the kind of context? In Vistrian, one of the concerns there was the beating had already occurred and the only way to remedy it was damages. Here you could have an injunction against the retaliation, couldn't you? I'm not personally aware of that procedure, Your Honor. I suppose he could have, but MAC tried to avail himself the best he could completely within that prison structure. And, moreover, even with an injunction, he couldn't have received damages and he could not have received back pay. He could have only sought reinstatement. So when we're discussing damages here, this is a Bivens or nothing context. If we wanted to discuss additionally a separation of powers legislative action issue here, the defendants argued that the Prison Litigation Reform Act bars mental or emotional injury recovery, so it shouldn't allow MAC to recover for these specific damages. But this is a constitutional rights injury, and the court even held in Vistrian that that exact act reflected Congress's intent to make more rigorous the process that prisoners must follow to bring suit in federal court. So that very statute that regulates how Bivens actions are brought can't actually be seen as dictating that a Bivens action shouldn't exist at all. And the defendants also bring up federal workplace protections that weren't extended to prisoners. But prisoners are not traditional employees with the same alternative remedial protections. This is strikingly different, and this does not implicate separation of powers issues. And as I had already said too, these special factors are strikingly different than in Vistrian. Whether to place an inmate in a more restrictive detention involves what was called real-time and often difficult judgment calls. This is not the case here. So we do not have these real-time and difficult. I apologize, was somebody trying to speak? No, it might have been technology. Yes, but this does not involve those more restrictive and real-time judgment calls that are at issue when you are talking about confinement. So that is the extent of my completed remarks. Does the court have any other questions that it would like me to address? I have nothing further. Nothing further. And nothing from me. Thank you very much. Thank you. I will just say some quick points about where plaintiffs left off. As I mentioned in my opening presentation, the question under a bossy is whether to recognize a cause of action as against a particular class of defendants and a particular category of claims. So plaintiff's suggestion that recognizing a bit of intimacy here won't implicate real-time and often difficult judgment calls is just not true. Decisions about where to place an inmate in work assignments can certainly involve questions about inmate safety. An inmate might not be able to work in a particular job because of safety concerns or around particular inmates. And officer safety might be implicated, or as here, simply prison discipline might be implicated. Special factors counsel hesitation in recognizing a retaliation claim, in particular in this context. It will require inquiry into just the he said, she said motivation that the court mentioned. And as Bistrian makes clear, that's a special factor counseling hesitation here. Ms. Dixon, on these three factors which were identified in a bossy, does any one factor in and of itself weigh in against extending a Bivens remedy? Is that enough to not extend the remedy? Or do all three special factors have to weigh against it? The Supreme Court stated in a bossy that the special factors must be considered together. But I think, Your Honor, this court and Bistrian found compelling the nature of the First Amendment retaliation claim in the prison context, specifically counsel hesitation. And I think that in itself makes sense as a reason to counsel hesitation, because, again, it implicates the separation of powers, it intrudes into the executive's domain, and it will require an increased burden on prison officials and the government at large. All of those are the special factors that the court identified in a bossy. And so we have additional ones here, as we explained in our brief, including the alternative remedy available and congressional action. But in Bistrian, this court just looked to the nature of the First Amendment remedy, or the First Amendment retaliation claim itself, and that is also a sufficiently compelling reason in and of itself, Your Honor. Just to speak to the legislative action briefly, here we have more than simply congressional silence in the PLRA. Congress not only did not create an individual damages remedy in the PLRA, but it went further and barred recovery of mental or emotional injury without a corresponding physical injury. That suggests that a First Amendment retaliation claim, which is rarely if ever going to involve physical injury, should not be recognized by the judiciary, taking a step that Congress has itself not taken. Similarly, Congress has not... You're equating a constitutional wrong with a mere emotional injury? Not equating, Your Honor, but simply stating that to the extent that we have congressional action in this area, Congress not only just didn't create a remedy, but Congress has limited certain recovery of prisoners, and that's just an additional reason for this court to hesitate. I'll also note that, of course, as Plaintiff mentioned, Congress has legislated extensively with respect to workplace protections, but has not included prisoners as traditional employees. And, again, Your Honor, all of this just goes to reasons for this court to hesitate to take a step that Congress has not created. Congress, rather than the judiciary, should decide in the first instance whether to recognize a damages remedy here, and under Abbasi, that compels the conclusion that a given cause of action shouldn't be recognized for Plaintiff's claim. Unless there are any further questions, thank you. Do we have any other questions? I have none. I have none. Okay. Thank you, counsel, for your very helpful presentation. We'll take the matter under advisement. Thanks very much. Thank you.